We have three cases to be submitted today on oral argument. I expect that we'll hear the first two and then take a brief recess and then hear the third case. And we begin with M.D.C.G. v. United States. Mr. Clore. May it please the Court, I'm Mark Clore here on behalf of the appellant M.D.C.G. and also her daughter. There are two reasons this case should be reversed and remanded for trial. Number one, under the Federal Tort Claims Act, the torts of government agents, federal agents committed in the scope of their employment are actionable. And so the trial court erred when it dismissed on 12B1 grounds certain torts at certain times by Agent Manzanares that occurred on March 12, 2014. Number two, with respect to the Tort Claims Act again, which incorporates and adopts the law of the forum state, Texas, there is a cause of action for negligent supervision by other agents in supervising Agent Manzanares. Go back to the first point you made. How does that prejudice your case and why should we pay any attention to whether, at this point, whether it was 12B6 or 12B1? Well, on 12B1 grounds, Your Honor, a couple of reasons. Number one, by doing, making that determination, we did not have the opportunity to have further discovery, which we reduced a number of things from discovery later on in the case. But it dismisses torts that are clearly actionable prior to the... So, Your Honor, if it had approached it under 12B6, you would have the opportunity for discovery under 12B6 that is not available under 12B1. Is that what you're saying? Well, Your Honor, in addition to that, yes, but in addition to that, we have, we pled clearly grounds sufficient that would have overcome 12B6 as well. In the Record on Appeal, page 34, paragraph 54, and page 13, paragraph 4, we pled the actions broadly enough to cover the pre-duty station torts. Did you have adequate discovery on discretionary function and on employment outside? No, Your Honor, we didn't. Here are some of the things we did not know. We did not... But did you have discovery? Were you allowed discovery on those two? At the time of the summary judgment motion, Your Honor, as far as discretionary function and what else? And the outside scope of disemployment, within the scope of disemployment. We were prohibited really from going into that further because of the ruling that had already occurred on scope of employment. We did have discovery to get to the issue of discretionary. You're saying that the court ruled on the, within the scope of disemployment, before you had any discovery? Before any discovery, Your Honor. The only thing we were able... Did you complain about that at the time, that you needed discovery? Yes, Your Honor, we complained that it was not the right time to do it because the facts may lead the court to different conclusions based on the evidence and we hadn't done that. What we did have in the record excerpts were the various policies, procedures, the Flores Agreement, things like that, that were online, frankly, that you can get and the court did take judicial notice of those. Let me ask you a question about something you said in the opening. You were saying you pled broadly enough to get past 12B1, 12B6, and then you said, I think you said, we pled broadly enough to include the pre, whatever the behavior was, prior to departure from the duty station. I think that's what you said. Yes, Your Honor. The point being, assuming that's something in the complaint in reference to that, but the other side says you waived that because you did not present that argument in the district court of behavior preceding the departure from the duty station. But, Your Honor, I understand what the court's asking, but when we pleaded broadly and the facts are to be determined in the light most favorable to the plaintiff, taken as true, but determined in the most favorable light to us, we pleaded broadly and we pled the torch from the time of custody forward. And part of the problem, without discovery, no one knew that Agent Manzanares had taken them to a duty station. We had pled that he had taken them by a government building. We had pled that he detained them, he put them in custody, then he takes them after that, starts driving them around, pulls over, is accepted when he puts the restraints on them, doesn't need to, they surrendered, there's agreement under the short-term custody policies of the Border Patrol. Both of those things were unreasonable under the circumstances. And then what he does is he puts them in the back of this, and so the court will know, I think the court can take judicial notice, this kilo unit truck is not just a truck, it's like, it's got a camper on the back of it that you would put hunting dogs in. And that's what he does, he puts them back in this, no water, no food, drives them around for two and hours and 45 minutes to three hours and 45 minutes, depending on when he picks them up. Before what? Before, in other words, what was the first stop? You said he put them in the truck, had their hands bound, and then drove around two hours after he had their hands bound. No, he put them in the truck, drove them around, took them out, or did not take them out, drove around, stopped, then put the restraints on them, then puts them in the back of this camper, and then continues to drive them around. Not in the back of the camper until that point? I believe that the facts and the way the pleadings were, the specifics were he had them and then he put them in the back of the camper after he pulled over and put the restraints on them. Later he duct-taped them, but that was after the duty station. He did not duct-tape them. Your Honor, what did you show was the typical practice, was it ever a practice of the Border Patrol to tape the mouths of arrestees? No, Your Honor, nothing in their policies says they can do that. In fact, in their restraint policies, in their short-term custody policies and in floors, it states, for months. If that were true then, it would clearly be outside the scope of their employment. And that, by doing that, I understand where the court is going with this, but taping them, the court could say that action was outside the court's scope, but an employee can go in and out of the court's scope. He was still taking them, transporting them to the duty station. He was still furthering the service of his employer. But as far as that, would it not follow that the tort that might arise from taping their mouths was outside the scope of his employment, and you cannot sue on that basis for that reason? For the taping, yes, Your Honor. That would be one way to analyze it. That is that he goes back into the scope of his employment, is what you're saying. But, Your Honor, that still, even taping their mouth, is excessive force and could be considered within the scope of employment. What? Taping them could still be considered excessive. Taping their mouths? Taping their mouths could still be considered excessive force and could still be in the scope of employment. But, assuming that it never occurred, was not authorized under any of the policies, and never was not any practice, no evidence of any practice of that, how could that be within the scope of his employment? What is your argument? Well, Your Honor, they have general authority to have duct tape with them, knives, not only their gun, their restraint devices, the zip ties. I mean, they're issued these things for, by CPB. So, the doing of that, whether he was doing that to try to keep them quiet so he could deal with something else on the radio, you know, that type of thing we don't know. But, I understand the court's position on the duct taping them. But, he still continued to take them to the duty station. When we first, when we first pled this, no one knew, and Judge Crane didn't know. When he granted 12B1, he didn't know that they had been taken to a duty station. We knew he had taken them to a government building. We knew he had then left the government building. Is there anything in the record that tells us why he stopped at the duty station? No, Your Honor, there's not. Unfortunately, he isn't around to be able to ask that. The appellants don't know that. I think the inference in the light most favorable to the plaintiffs would be that he was going to report in. We don't know if he changed his mind. He started getting texts from his wife right before that time, right after that time over issues with his child. And, we don't know, frankly, if a switch flipped in this agent. And, after he left the duty station, you know, he could have been wanting to let them go. He had a history of letting other people go. But, then he changed and did what he did. So, our position, basically, on the pre-duty station, towards Your Honor, is that the significant and extreme torts granted are after the duty station. But, the trial court looked at that backwards. It looked at those severe torts or extreme torts and kind of went backwards, not looking at the torts that occurred before the duty station in terms of the transport, the violation of the floras, the policies, restraint, transport. The court did not know Hypothetically, this is not your case. Suppose, hypothetically, that on the way to the duty station, he had stopped the vehicle and forced these women out behind a barn and had assaulted them and put them back in the van and proceeded to the duty station to fill out whatever paperwork and do whatever he was supposed to do. Would that assault have been under the course and scope of the employment? If he pulled them out and assaulted them without any provocation, not in the furtherance of any business of his employer, without any provocation, and it's not connected at all to the object for which he was employed. If it's just excessive force, it's one thing, it would be within course and scope. But, the court could also look at that and say, okay, well, under these circumstances, these facts, it's out of course and scope. At a 12B1, though, that's an improper time to make that determination. Well, of course, as a matter of law, we can treat it as a 12B6 if we want to. Yes, Your Honor. Make that decision. De novo, of course. And, the court can do that, but in this situation, we have all of these horrific torts that occurred after the duty station as opposed to before. So, tell us in a sentence or two why those acts, in your view, are in the scope of employment. After the duty station. After the duty station? Your Honor? After the duty station. After the duty station, we would concede the sexual acts are not in the scope of employment. Physical acts, and again, the court understanding at the time we pled it, we didn't know he'd ever taken them to a duty station. So, the question was, was he even going to do that? So, but excessive force that he used against the appellants and also the minor plaintiff after he left the duty station would depend on whether or not it's furthering the purpose of the employment. So, under the facts we have, we don't have that after the duty station. So, if you went back down, what would you be left with given your concession on the after the duty station, you'd be left with what? A pre-duty station, torts, number one. And more importantly, Justice Stewart, we also would have a situation where that would have been imputed to the government. And there's Texas case law in our brief, the Tarver case, the Green case. An agent's, a law enforcement officer's actions in terms of investigating, reporting, are imputed to the employer. They sent this officer out to check these centers, to check this family unit. Then the family unit disappears off of video. They don't know where it is. They don't continue to check on him after that point. And in fact, part of the reason for that is not just for undocumented people, but to check on the officer's safety. If these people had been, they weren't, but if they had been the kind that had guns or were dangerous, part of the whole purpose of the supervision, which is the second point, is to also help protect the officer as the court recognized in its opinion. One of the reasons why discretionary function does not apply that we'll come to. But the second point we would have is we would have knowledge imputed to the government that they were in his custody. At the time he was in the duty station, and then they let him drive off. Now, we have no video camera evidence. It's gone missing. Just have a brief period of time to address the negligence claim. Yes, Your Honor. You ought to say something about that. Yes, Your Honor. On the negligence claim, we simply do not believe that this is the type of conduct that discretionary function was designed to shield. It's not a public policy matter. They completely ignored any supervision. The government wants to use the supervisory function on the one hand as a shield to protect against discretionary conduct, public policy reasons. But on the other hand, use it as a sword to protect the agents in the field by virtue of supervisory function. It's not, as Judge Crane noted, and we believe Judge Crane had that right, it's not a public policy analysis. And that analysis would be different for the appellants versus the minor plaintiff that is not part of the appeal. All right. You've saved time for rebuttal. Thank you. Thank you, Your Honor. Mr. Waldman. Good morning, Your Honors. Joshua Waldman for the United States, the appellee. The facts in this complaint are tragic, and Officer Manzanar's conduct was obviously abhorrent. Can you keep your voice up a little bit? Yes. The legal question in this case, however, is whether the district court correctly held that Agent Manzanar was acting outside the scope of his employment when he essentially kidnapped the three plaintiffs, took them in restraints, drove away from a government building to a secluded area to commit unprovoked physical and sexual assaults. However egregious that conduct is, it precisely underscores why that had no connection whatsoever to his mission or purpose or authority as a Border Patrol agent. This was so far afield from the scope of employment, and— What did the records show about the practice of the Border Patrol in putting the immigrants in handcuffs? You're talking about the risk restraints, Your Honor? I don't know anything in the record about whether the policy was one way or another. But what the district court had pointed out in its opinion is, to the extent you're just looking at that earlier conduct before the government facility, all that happened was an arrest and a restraint, which is highly typical for what Border Patrol agents do. And Texas law would not recognize any tort of false arrest or assault based on a lawful arrest that was done with consent, as was conceded in the complaint here. So there was no question that the plaintiffs conceded to the—consented to the arrest because they recognized they had crossed the border unlawfully. And this was a uniformed Border Patrol agent. And the restraint itself, Texas law says, as long as you use reasonable restraint— Well, that's the question here, is whether it was reasonable or not. As I understand it, he put them in restraints after he put them in the back of the truck where you put your dogs when you go hunting. Right. And I think normally when people are arrested, for example, by a police officer on the street, you can be put in the back of a car and have risk restraints. And it's their burden to show that it would be— He didn't have a chance. That's his point. Well— 12b-6, he didn't have a chance to do it. They just dismissed him on the face of the plaintiffs. Right, which is normal under 12b-6. You assume that you— I know it's normal in 12b—12b-6, you mean? Yes. 12b-6 allows introduction for the point—from the point of determining whether the court has jurisdiction. And here, the case is all about jurisdiction, that is, within the scope of the employment and the discretionary function. But what the court did, and it said this in at least four instances—this is cited on page 16 of our brief— Keep your voice up, please. The district court said on four occasions that it was assuming the truth of the allegation in the complaint. And while it treated it as a B-1 jurisdictional question, this court, as it held in Daigle, can treat it as a 12b-6 if you think that that's the more appropriate procedural— I understand, but, I mean, he could come in on 12b-6 discovery, perhaps, and show, look, he put him in restraints in the scope of his employment. The red, it was in the scope of his employment to arrest him, and within the scope of his employment, generally speaking, to put proper restraints on him. But he could show here that it was totally improper restraints, and consequently constituted a tort. Well, in a 12b-6 motion, you don't normally get discovery. You assume the truth of the complaint, and it's only if the person— Well, and whenever the—whenever it's a—the tort claim act, and jurisdiction is dependent totally upon, in this case, whether it was in the scope of his employment, and you can show that it's within the scope of his employment to arrest people and to properly restrain people in a reasonable way, and that they did it in an unreasonable way and properly restrained them, it seems to me he's getting an inch by inch by inch out of the—toward the scope of his employment. With respect, Your Honor, I think those are two different issues. I don't think there's any question. And we say in our brief that it's likely that when you made the initial arrest, the officer was within the scope of his employment. That's what he does. He arrests people and sometimes restrains them when they unlawfully cross the border. But then the question is whether that would state a claim under Texas law for the tort of unlawful arrest or an assault because he used restraints. And what the district court said is Texas has a privilege for law enforcement officers, which this court has held applies under cases in the FTCA. And under those privileges, if your arrest uses objectively reasonable amounts of force, it is not an assault. And if there's consent for the arrest or it's reasonable under the circumstances, it is not— But he could show that this was unreasonable. That's the point I was trying to— Well, I think— He could show that it was unreasonable. I don't think that he could, as a matter of law, show that a Border Patrol officer who uses risk restraints is per se objectively unreasonable when they're in a remote area with three plaintiffs and they need to be taken back lawfully for detention. Why didn't he put him under restraint? Why didn't he put him under restraint at the time that he arrested him? As I understand the facts, maybe I'm incorrect about this, that he put him under restraints sometime after he arrested him and had transported him some distance before he stopped the vehicle and put him under restraints. That's true, Your Honor, but that doesn't make, by any stretch, the later restraint objectively unreasonable. If he could have done it at the outset, doing it later certainly doesn't— But there was no reason to put him under restraint. Well— No reason whatsoever to put him under restraints, and what he would argue is that it instilled in them emotional distress and incited fear in them by putting them under further restraints. Right. It seems like he could have— He may not make it all the way to the goal line, but it cuts him—advances him a little bit. With respect, Your Honor, I don't think that could make out a claim under Texas law, and my own view of this is that the question is— This goes solely to the question of whether an assault was committed under Texas tort law, and I think it's clear under Texas law, and it's our view, that an officer who restrains someone who is lawfully arrested, who consented to the arrest, is entitled to use risk restraints, and that's per se objectively reasonable as a matter of law. That's our position. I think that's the position that the district court took as well. So you're saying even taking the plaintiff's complaint most favorable to them and the allegations about the pre-duty, you know, he puts them in, he goes two or three places, then he restrains them, et cetera, taking all those facts in his favor, you're saying this privilege under Texas law would insulate there from being a tort under Texas law? Yes, for the initial arrest and restraint, yes. For the later conduct after he left, that scope of appointment. Yes, that's exactly correct. And the district court's ruling was based on the privilege? Yes, the Texas privilege law, we cited in our brief, it was cited in the district court's opinion as well, and that's my reading of it. Now, if they thought that that was a misunderstanding of Texas law, of course, this was on a motion to dismiss, and two years passed before there was a summary judgment motion. So if they thought a mistake of Texas law had been made, you can bring a motion for reconsideration and say, I think you made a mistake. You have two years to do that. But they didn't do that. They're asking for a second bite at the apple now, and I think that that's inappropriate. So while the summary judgment motion was pending, was there a request for discovery, for additional discovery? Oh, yes, there was discovery, Your Honor. There was depositions of various officers. There were declarations filed by the government. So it wasn't as if there wasn't an airing of the facts. They got discovery of various policy manuals and so forth and so on so they could make their case, and the district court then ruled on summary judgment, which was entirely appropriate for it to do. Here, I think that it's clear that the discretionary function would fall. Okay, so excuse me. So Mr. Clore told us, if I got it down right, that there was no discovery in the beginning because the case on scope of employment had already been dismissed. Is that right? The scope of employment was a threshold issue, and there was a dismissal. But the court retained certain claims, the negligent supervision claim, negligent hiring, negligent retention, and some false arrest claims as well, and then there was discovery on those. And then the district court granted summary judgment two years later after discovery. As for the initial dismissal, there was no discovery at that point because the court said, well, I can rule just assuming the truth of the allegations in the complaint. And as we cite on page 16 of our brief, the district court said four times it was assuming the truth of the allegations in the complaint. What was the point of the district court certifying this under 54B? What was left in that one individual's case that precluded him from including her in the judgment? The district court held that for the one plaintiff, I believe the initials are J and A, that there was a live and plausible negligent supervision claim. The district court's reasoning was, after the supervisors were aware that the plaintiffs had been taken into custody by Agent Manzanares, which happened at about 5.15 on the night in question, after that point, then there was a duty on the part of the supervisors that arguably was breached. And for that reason, the assault which continued after that point against that one plaintiff remained live. So whatever we do with this case, we remand it to the district court for further proceedings? It depends on how you rule, Your Honor. If you agree with the government that the discretionary function exception would bar the negligent supervision claim, then that would apply across the board, including to the one plaintiff whom the district court believed had a remaining live claim. Well, no, I mean, if we rule on negligent supervision here and say that he has not stated a claim, he's still got that live claim down with respect to that one individual because he says at that time she put the... the Border Patrol was on notice at that point that the Border Patrol agent involved in this was dangerous and was assaulting people and they should have done something about it in terms of their supervisory powers. Right, but then the next question would be if that is correct and establishes a tort under Texas law, would that tort nonetheless be barred by the discretionary function exception under 2680A? No. You'd still ask whether the FDCA would bar that tort as a matter of discretionary function exception. I thought you were telling me that the reason the claim remains before the district court is that the discretionary function does not apply because at that point they were on notice to exercise their discretion about controlling this individual who is committing these assaults. No, I'm sorry if I gave you the wrong impression, Your Honor. Let me see if I can disentangle them. There's two questions when it comes to negligent supervision. First is whether Texas would recognize the tort under these circumstances, and second, if it would, would the tort nonetheless be barred by the discretionary function exception under the FDCA? The district court held on the first question that there was no Texas-recognized tort until after there was actual notice at 515. Then the district court denied our discretionary function defense. The government's view is if you disagree with the district court and agree with us that the discretionary function exception bars the negligent supervision claim in this case, that would apply across all the plaintiffs, regardless of those who could and couldn't state a tort under Texas law. Why? In other words, if the facts here are different, why is the result not different? The facts would be different, and the district court believed they made a difference for whether Texas recognizes the tort. But they don't make a difference for the discretionary function exception because discretionary function exception asks a different set of questions. First, it doesn't ask about knowledge. It asks whether the decision, the supervisor decision, is susceptible to policy analysis in this case. And many courts, including this court in Doe, have held that supervision of government employees is the paradigmatic case for the discretionary function exception. All right. May I ask you this? If, assuming the facts showed that the border patrol, the supervisors, had no notice that this individual was misbehaving in any kind of way, until this one woman escaped, went to the border patrol, says, you've got an agent out there who is assaulting women, and he's still on the loose and has one of my acquaintances with him at this moment, and they did nothing whatsoever to try to track this man down and locate him, does that come under negligence? And they just sit back, they don't do anything about this agent that is under their supervisory control. And he goes ahead and rapes, as he did in this case, rapes this other girl. Are you telling me that the supervisory claim here is subject to the discretionary function rule and consequently we have no jurisdiction over that claim, notwithstanding the facts I said? No, Your Honor, I'm not claiming that. I think that's their claim, isn't it? No, Your Honor, in fact, what the district court made in terms of factual findings here at the summary judgment phase is that as soon as they became aware of this, one of the plaintiffs escaped and flagged down a camera. And as soon as they did, this border patrol agent sent out officers, found her, immediately transported her to the hospital, found the other plaintiff who had been assaulted and transported her immediately to the hospital. And so the only one who was left was someone they didn't know where she was, and they tried to then track down this officer and eventually found him in his home where he then engaged the police and ultimately took his own life. But as soon as we knew of everything, we acted in a completely responsible way. The question is whether between the initial arrest and that 5-15 time period, whether or not we were negligent in supervising this employee without any knowledge of what he was doing. And so what they're asking for is essentially a rule which would require supervisors to constantly be checking in on employees. Do you have somebody? Do you have somebody? Did you get somebody? And this is the kind of... This would be a damages action, sounding in tort, where the courts would be imposing a non-discretionary mandatory policy on the agency that itself has not adopted that rule. And in fact, the policy about communications here calls for, quote, regular communications, and I'm going to quote the plaintiff's brief quoting the policy, insofar as technologically possible and resources allow. Those words on their face just are teeming with exactly the kind of discretion that the discretionary function is talking about and precludes torts on that basis, because otherwise you have the court's second-guessing legislative and executive choices about how much discretion to give their supervisors and their employees in their relationships. And without a mandatory policy, the discretionary function exception applies. The only... I guess, underlying the point that I was making, and maybe you've answered it, is that you are saying that whatever we do in this case about discretionary function applies to the case that the district court has retained jurisdiction on, notwithstanding the difference in the factual situation between the plaintiffs here and the remaining plaintiff before the district court. Right, because the district court only went on to look at the post-515 conduct because it held that the discretionary function exception didn't apply to the entire course of supervision. And the reason why it does apply to the entire course of supervision, the district court thought, well, if the person, the supervisor, isn't actually making a policy-based decision, then the discretionary function exception doesn't apply. And what the Supreme Court has held is it's not the subjective intent of the officer in that moment, but whether the type of decision we're talking about, how to supervise an employee, is susceptible to economic or political or social policies. Right, so you're saying the district court made an error in not including the plaintiff that remains in the district court as part of this judgment. Yes, and the reason it made that error is because it erroneously thought the discretionary function exception didn't apply. If it had applied the law correctly, it would have found that the exception does apply, as this court held in the Doe case, and many other circuits, the First, the Ninth, I believe the Third, have held that this is the quintessential type of discretionary function exception. Okay, so if we rule in your favor on the negligent claim and say that in this case, clearly, the discretionary function applies, should we say anything to the district court, like you should rule the same way we're ruling here in the case that's remaining in the district court? The district court's got to take it up themselves. Yeah, I think that you could say, may I, Your Honor, my red light's on, may I answer your question? Thank you, Your Honor. I think you could instruct the district court that your discretionary function exception would apply to all the negligent supervision claims, including the one that it thought was live, and if you go back and read the Rule 54B certification, I believe there's a sentence or two in there where the district court recognized that part of the reason it was certifying is if the government prevails on some issues that it had lost before the district court, it would eliminate all remaining claims and not just the ones that the district court dismissed or granted summary judgment on. If there are no further questions, thank you, Your Honor. Yes, thank you, Mr. Walden. Mr. Clarke for rebuttal. Thank you, Your Honor. Let me begin by first of all addressing something that I think I may have misspoken as to Justice Jolly. The duct taping did not occur and was pled, and the evidence shows, and it's in the record, did not occur until after the duty station. So it was undisputed that all the acts were in the course and scope prior to the duty station. Now, I understand the court can apply, gets to apply the law to the facts of that, but saying when it's undisputed that the light is red, coming to a decision that the light is green, we believe is another basis for error. Turning to the issue . . . But you are correcting me that the mask, the mouth was not taped until after . . . After the duty station. Correct, and I apologize for that, Your Honor. With respect to the restraints and the issue, the issue is objectively reasonable for us. That's what it is under Texas law, and the Texas law is about officers using force. If he didn't need to use it to begin with, they surrender without incident, they pose no problem to him, why does he take them then later and then restrains them? It violates three things. Number one, the Flores Agreement, which is in our records excerpts, and it is R.O.A. 112, which states that the least restrictive custody should be used for the minors. Number two, it violates the short-term custody policy, which has down a recognition that the undocumented person shall be promptly processed and transported. Actually, it's blanked out on it, but it's a one-hour time period they're supposed to do that. Our subsequent evidence showed this was closer to three to four hours that he did that, usually driving around, and they're scared to death, frankly, under this circumstance in the back of this camper. So excessive force was also used. It violated excessive force policies by doing it because it's not objectively reasonable. That's in our record excerpts as well. There was no waiver on this. You're saying that some federal excessive force policy applies here rather than Texas law? Yes, Your Honor, because the Customs and Border Patrol has adopted, and they've assumed by adopting, they've assumed the duty like the Sheridan case would tell us to follow those policies, and they have what is excessive force and they have reasonable force under the circumstances. It's pretty much the same as Texas. I'm not suggesting there's a significant difference, but it's just another reason for that. There was no waiver of this because we specifically brought it to the trial court's attention in our brief, ROA pages 114, 141, 146, showed the court we brought this to the court's attention that 12b-1 was not the appropriate vehicle to do this because the variables of all the circumstances may lead the court to different findings about course and scope, for example, based on case-specific evidence. Directly what we told the court. We then brought it up after we lost on 12b-1. The argument is, well, we didn't do a motion for reconsideration. We tried to bring it up to the court again at a status conference hearing. That is reflected on ROA pages 1158 through 1162, and this was a year or two later. The court shut us down, wouldn't let us go back into it, said he'd already ruled on it, and we couldn't get any discovery on that. So we feel very strongly that the pre-duty station torts are viable as to everyone because either they should have been ruled on at 12b-1 on the basis they did, or the court ruled against the undisputed evidence, the opposite of it, contrary to it, in his ruling. Turning to the second point, negligent . . . Let me just quickly answer. On the pre-duty station tort you allege, counsel opposite argued that this privilege under Texas law would knock out your claim on that. So what's your response about this privilege? If the court looks, and I believe it's in the briefs, if the court looks at Texas law, they still have to use objectively reasonable force, and there was no reason in that situation to have them restrain them and bound them in these flex cuffs in the back of the truck afterwards when they put up no opposition at all to him. So on the issue of negligent . . . Objectively reasonable force doesn't necessarily mean the least restrictive force. Well, Your Honor, it does say the least restrictive custody for minors under the Flores Doctrine, which the Border Patrol has adopted. That's page 114 of our ROA. The Border Patrol adopted the Flores. So that's the situation. With respect to negligent supervision, there is a difference for the appellants versus the remaining plaintiff because the type of conduct which the court would consider whether or not to shield for public policy reasons was different, and the knowledge was different at different times. At the time they were at the duty station, knowledge was imputed that he was in their custody, and there was not contact, nothing done. Following that, the question is not one of predictability. It's foreseeability. Your time has expired now. Yes. Thank you, Your Honor. Court, your case is under submission. Next case for today, Oracle-LLC v. EPI Consulting.